Camden and Amboy Railroad Co. *v.* Stewart.

## MARCH TERM, 1870.

THE CAMDEN AND AMBOY RAILROAD AND TRANSPORTATION COMPANY, appellants, and STEWART, respondent.

1. An appeal lies to an order of the Chancellor sustaining exceptions to a bill for impertinence.

2. With respect to appellate jurisdiction, there is a class of cases to which no certain test can be applied, but each case of such class, in this particular, must be adjudged by its peculiar circumstances.

3. The case should be especially clear, to warrant the expunging of matter from pleadings as impertinent; but when the Chancellor has struck out statements from a bill which are very prolix, and appear to be of but small importance to the case, this court will not interfere with such order.

4. A deposition of a deceased or foreign witness, appended to an injunction bill, is not competent in the absence of proof that the suit in which it was taken was between the same parties and related to the same subject matter, and the only legitimate proof of such deposition is by a compared or duly certified copy.

5. There is no relaxation of the rules of evidence with respect to affidavits annexed to injunction bills.

The bill was for the specific performance of a contract alleged to have been made by the respondent, who was the defendant below, to convey a tract of nine acres of land, and to grant a right of way in front of his other lands, for the railroad of the complainants. This contract was contained in the following receipt, which was set forth in the bill, *viz.* "1832, Sept. 15th. Received of E. A. Stevens his check on Trenton Bank, dated December 1st, 1832, for the above sum, for which I agree to execute a deed of conveyance for the above tract, in conjunction with Mrs. Stewart, and also a grant of the right to pass in front of my premises with said railroad, the said company furnishing me with suitable passage ways to the river, for which said check, when paid, will be in full." The bill alleges that at the time of the execution of this contract the complainants were constructing their road, "based upon the idea of a double track."

The bill then contained certain other statements which were the subject of exception by the defendant, on the ground of impertinence. These statements are sufficiently indicated in the opinion delivered.

The exceptions being sustained by the Chancellor, this appeal was brought from that decision. The opinion of the Chancellor is reported in 4 *C. E. Green* 345.

*Mr. Gilchrist,* Attorney-General, for appellants.

*Mr. J. Wilson* and *Mr. P. D. Vroom,* for respondent.

The opinion of the court was delivered by

THE CHIEF JUSTICE.

The question was raised on the argument of this cause, whether an order sustaining exceptions to a bill on the ground of impertinence, was subject to an appeal to this court. The objection to such a course of proceeding appeared to be that the order was one merely incidental in the progress of the cause, and which was addressed to the discretion of the Chancellor.

The language of the statute upon this subject is, that "all persons aggrieved by any order or decree of the Court of Chancery may appeal from the same, or any part thereof, to the Court of Errors and Appeals." *Nix. Dig.* 116, *pl.* 80. From the terms here used, it is clear that the intention was to give a wide scope to appeals. The only limit imposed on the right is the circumstance that the party appealing must be, in a legal view, "aggrieved" by the order sought to be reviewed. This restriction obviously excludes from the category of appealable matters, all orders which lie wholly in discretion, and which have no tendency to affect any right in litigation. It was on this ground that this court declined to take cognizance of an appeal from an order of the Chancellor refusing to pass to a general guardian moneys derived from the sale of the minor's real estate. *In the matter of Anderson,* 2 *C. E. Green* 536. The same princi-

ple is recognized in *Garr* v. *Hill*, 1 *Halst. Ch.* 641, and *The Attorney-General* v. *Paterson*, 1 *Stockt.* 625.

But these decisions simply show that there are specific cases which are not the objects of appeal. They provide no practical test, nor do they establish any general rule. And, indeed, a little reflection will satisfy any one that it is not possible to adopt any universal criterion. Thus, in *Rogers* v. *Hosack's Ex'rs*, 18 *Wend.* 329, the Court of Errors of New York held that no appeal would lie from an order of the Chancellor refusing to remove an executor and to appoint a receiver in his stead, and Mr. Justice Cowen, attempting a general definition, said : " I understand the line of authorities to stand almost without exception, that to warrant a reversal upon appeal from chancery, some definite rule of law or equity must appear to have been violated." Other judges have said that any order which affects the merits of the question, or touches the rights or interests of the parties, is appealable. But any attempt to apply any of these definitions of the scope of appellate jurisdiction, will at once show that they are entirely too general and abstract to have controlling effect as rules of practice. All persons will probably admit that an order which does not, in any degree, reach to the merits of the controversy, or affect the substantial rights of a litigant, does not belong to the appealable class of orders, but the embarrassment is to provide a test by which orders having such an effect can be distinguished. In New York, the subject has undergone reeated and pelaborate [discussion, and yet no such test has been discovered. In the case of *Beach* v. *Fulton Bank*, 2 *Wend.* 225, an appeal was entertained from an order of chancery refusing to open proofs in a cause for the purpose of re-examining a witness, on the ground that such order affected the merits of the cause. On that occasion, Mr. Justice Marcy read a carefully prepared opinion, reviewing all the previous cases, the result reached being that no standard to discriminate appealable from non-appealable

orders, could be devised. In this view the Chancellor and Mr. Justice Sutherland concurred.

This subject does not appear to have been discussed to any great extent in the English courts. But the cases in which appellate jurisdiction has been exercised cannot be arranged within any rule having inflexible boundaries. For example : The granting of an issue in a chancery suit to be tried by a jury, is generally regarded as a matter of discretion, and yet in *Hampson* v. *Hampson*, 3 *Ves. & B.* 42, Lord Eldon says : " I agree that a mistake in refusing to send the cause to a jury, is a just ground of appeal, if the Court of Appeals should think that the contrary decision would have been a sounder exercise of discretion;" and it has since even been held that where the House of Lords thought that the court below had directed issues improperly, the order directing such issues would be reversed, and the cause remitted with directions to the Chancellor to decide the matter himself. *Nicol* v. *Vaughan*, 2 *Dow & Clark* 420; 5 *Bligh's Appeals* 505. Vide etiam *Earl of Winchilsea* v. *Garetty*, 1 *M. & K.* 253; *Dudgeon* v. *Thomson*, 29 *L. & E. R.* 12.

Under these circumstances, it is not surprising that the English books of practice are found stating the rule, in the comprehensive language of our statute, that " any person who finds himself aggrieved by a decree or order of the Court of Chancery, is entitled, as a matter of right, to appeal to the House of Lords." 3 *Daniell's Ch. Pr.* 1633. The ancient order of the appellate court, requiring parties to print their cases forthwith, seems to have been designed as a preventive of appeals merely for delay and vexation, the same end being at present attained by the certificate of counsel that there is reasonable cause for appeal. *Id.* 1637.

From my examination of the authorities, and my reflection on this subject, I am satisfied that it is not practicable to settle any test, which will be applicable in every case, so as to separate into classes those orders which are appealable and those which are not. There are many cases which are

obviously appealable; there are some as obviously not appealable; but there is an intermediate class which cannot be reduced to any fixed rule. When this latter class is to be dealt with, it would seem that this court is called upon to exercise a special judgment in each case, in view of its peculiar circumstances, and having regard to the general proposition above noticed, that an order to be appealable must go, to some extent, to the merits of the controversy, or substantially affect the legal or equitable rights of the party appealing.

Looking, then, in this light at the present case, I think it has a foothold in this court. The purpose of exceptions to a bill or answer is, to strike out something which the party, whose pleading is thus assailed, has deemed important to his case. When therefore an appeal is brought in the course of this proceeding, the basis of it is, that the court below has erroneously suppressed that which the appellant insists is of moment to the complaint or defence, as the case may be. If the appellant therefore be right in such insistment, then obviously he has been aggrieved; that is, he has been deprived of his legal right to a fair statement of the whole of his case. It would be unjust to assume, *in limine*, that he is wrong in this contention, and on the assumption of his being right, a privilege which the law accords to him has been withheld. The point to be settled by this appeal is, whether the matter put out of this bill be irrelevant or not; if relevant, then unquestionably the striking out was a wrong affecting the rights of the appellant involved in the suit. Upon principle, then, I think this appeal sustainable. There is also a precedent for it to be found in the case, in the House of Lords, of *Rickards* v. *The Attorney-General*, 12 *Clark & Fin.* 30. It becomes, then, necessary to look into the merits of this appeal.

The point in dispute between these parties appears to be, whether the defendant, according to the terms of a certain written contract, contained in a receipt set forth in the bill of complaint, agreed to grant to the complainants a general

right of way for their railroad in front of his property, or only right of way over a single track. The bill states the written contract, and certain circumstances tending to show the sense in which the terms of the contract were intended to be used. After a denial that such deed or grant was over delivered, there is an averment that in a certain suit in chancery in the Circuit Court of the United States, the defendant alleged that he had made and delivered a deed for nine acres of land, and granted therein a right for the complainants to pass in front of his premises with a track of a railroad. Then follows a further extract from this bill in the Circuit Court, containing an additional statement of the defendant, that at the time he delivered this deed he overheard a conversation between certain agents of the complainants, to the effect that they designed fraudulently to suppress this deed, and to claim under the contract in the receipt. The bill then proceeds, after a few unimportant averments, to extract from another and subsequent bill filed by the defendant in the same Circuit Court, an account of the alleged delivery of this same deed, which it is contended is inconsistent with the first above mentioned statement of the same affair.

Now I think it can be gathered from the contents of this bill, although it is defective in not containing a direct averment to that effect, that the complainants anticipate that the defendant will set-up, by way of defence, that he delivered a certain deed which was received as an execution of the written contract upon which the suit is based. Upon this supposition the complainants had the right to suggest in their bill such anticipated defence, and to aver the existence of circumstances within the knowledge of the defendant, which were calculated to overthrow it. It is always to be remembered that a bill in equity has a two-fold purpose. The first is to bring before the court and to put in issue the facts upon which the complainants right to relief rests; thus far the bill is equivalent to a declaration in an action in the common law courts; but it is likewise an examination of

the defendant for the purpose of obtaining evidence to establish the plaintiff's case, or to counter-prove the defence which it is supposed may be set up in the answer. I think, therefore, the general rule must be, that the complainant must be permitted to set forth any fact, the admission of which by the defendant, will go either to establish the complainant's own case, or overturn that of his adversary. This I understand to be the established doctrine. It seems to me, therefore, the complainants in this case had the right to inquire into facts or circumstances within the apparent knowledge of the defendant, or into any declarations or admissions made by him with respect to the alleged delivery of the deed in question. But such circumstances or admissions must be of a tendency to benefit the complainants. The testimony sought for must in some way appear to be of use to the party seeking it, otherwise it is useless in the case, and serves but to cumber the record. In the present instance, the testimony sought to be evoked by the extracts referred to, are held to be important, inasmuch as they show that the defendant has given inconsistent accounts of the transaction, during which he alleges he delivered the deed in dispute. If this were so, and the examination upon the point were conducted with the requisite brevity, it seems to me that the inquiry would be both pertinent and important. I must think the complainants have a right to ask the defendant himself if he has not given inconsistent accounts of the very matter which it is anticipated is to be relied upon as a defence. But after a careful collation of the extracts from the bills of the defendant, I cannot perceive the least inconsistency between them, considered as narrations. The incompatibility relied on consisted in the alleged fact, that the defendant said in the first conversation, that he heard a certain conversation which he denied that he heard in his second bill. But it is obvious that the conversation which the defendant said he heard, was not the same to which he subsequently refers, because he expressly declares that the conversation which was heard by him was after he had de-

livered his deed, while the latter one to which he alludes, was before the delivery of the deed. As there is no incongruity, the result is that we have at great length two extracts from chancery bills, to the effect that the defendant claims that he delivered a deed in execution of the written contract, containing a right of way to the complainants for a single track. Such prolixity of statement in so simple a matter is not proper, and amounts to impertinence. I fully concur in the views upon this subject of Mr. Vice Chancellor Bruce, in *Davis* v. *Cripps,* 2 *Younge & Coll.* 443, expressed in the following terms : " The court in cases of impertinence ought, before expunging the matter alleged to be impertinent, to be especially clear that it is such as ought to be struck out of the record, for this reason, that the error on the one side is irremediable, on the other not. If the court strikes it out of the record, it is gone; and the party may have no opportunity of placing it there again. Whereas, if it is left on the record, and is prolix or oppressive, the court, at the hearing of the cause, has power to set the matter right in point of costs." But this consideration addresses itself principally to the judgment of the court below. It ought to be a clear case, manifestly showing that the party complaining will lose substantial rights, to induce this court to annul an order of the Chancellor finding impertinence in the proceedings before him. Even if I perceived that the complainants might be subjected to some inconvenience or slight loss by this striking out, I would not feel justified in interfering with this order, inasmuch as there is clearly in the statements embraced in this first exception, too great prolixity. In *Slack* v. *Evans,* 1 *Price* 278, *note,* Lord Eldon uses this language : " If I decide with the master, I must decide that the prolixity is not impertinent, which I should be reluctant to do. If, in an examination, the examinant sets forth tradesmen's bills at length, it is impertinent. So a prolix setting forth of pertinent matter is itself impertinent."

Upon these grounds I think the appellant is not entitled to prevail on this first exception.

The second exception is but an adjunct of the first, and must consequently also be sustained.

With regard to the third exception I have but little to say, as it seems to me so obviously well taken.

Its purpose is to object to the introduction into the bill of the recital in full of two deeds. The first purports to be a copy of a deed for the nine acres of the land in question, from the defendant to the complainants, and the grant of a right for a railroad track in front of his land; the second is a copy of another deed which it is said the defendant tendered to the complainants, upon learning that the former was not forthcoming. The two deeds are in all respects alike, with the exception that the former of the two contains a covenant on the part of the railroad company which has no pertinence to this issue. During the argument I listened attentively for some plausible explanation of the use in this bill of these transcripts or either of them. I failed to hear, or if I heard, to understand any such explanation. I am not able to conjecture any event in which this elaborate statement can become advantageous. These deeds are in accordance with the admitted understanding, except as to the disputed point as to the right of way. In that particular they are but a written statement of the intention of the defendant. It does not seem to me that it can in any respect whatever benefit the complainants, to have the admission of the defendant that he reduced this intention of his to writing, and delivered or tendered it to the complainants. This appears to be the entire purpose of this part of the bill, and admitting its usefulness, it certainly was unnecessary to present it in a form so verbose. The whole point of the inquiry could have been propounded in half a dozen lines. Such prolixity as this constituted, as I think, clear impertinence.

The last exception embraced in this appeal relates to the suppression of the deposition, annexed to the bill, of Mr.

Stevens. This was one of the proofs sustaining the case made by the bill, and intended to be used for the purpose of obtaining and sustaining an injunction. In an affidavit also annexed to the bill, it is stated by the affiant "that he acted as counsel for the above complainant in a suit brought against the said complainant by Charles Stewart, in the Circuit Court of the United States for the District of New Jersey, being one of the suits referred to in the bill in this cause as having been brought in that court; that Edwin A. Stevens was sworn as a witness in said cause in said Circuit Court of the United States, and testified in deponent's presence and hearing, as set forth in the schedule to this affidavit annexed." It also appeared in this affidavit that Mr. E. A. Stevens was out of this state.

The question is, whether the deposition of Mr. Stevens was, under these circumstances, competent evidence? It is insisted that it appears to be a deposition taken in a suit between the same parties. But this is not enough. It must be shown that the suit related to the same subject matter. This does not appear. I also agree with the Chancellor, that the only legitimate proof of a deposition is by a compared or duly certified copy. "With regard to the proof of depositions in chancery," says Greenleaf, Vol. I, section 516, "the general rule is that they cannot be read, without proof of the bill and answer, in order to show that there was a cause depending, as well as who were the parties, and what was the subject matter in issue." I am not aware that there is any relaxation of the rules of evidence with respect to affidavits annexed to injunction bills.

I think the decree of the Chancellor should be in all respects affirmed with costs.

The whole court concurred.