IN THE MATTER OF THE PERSONAL ESTATE OF ELIZABETH R. WEST, DECEASED.

*Letters of administration — power of the surrogate to revoke them — for what causes it may be exercised — Code of Civil Procedure, sec. 2685.*

As the surrogate was about to grant letters of administration to one West upon the estate of his deceased wife, the appellant, Mary Jones, a sister of the deceased, and her friends applied to West for his consent to have her associated with him as administratrix, it being then represented and stated to West that there would be in that case no conflict of interest as to the estate. To establish peaceful relations between himself and his sister-in-law, West was induced by these representations to consent to have the appellant associated with him as administratrix.

On the day appointed for an appraisal of the property the appellant, for the first time, claimed a large portion of the personal property, averring that it belonged to her and her sisters and brothers, under the will of their father, and refused to produce for appraisal a large portion of the personal property which the intestate had used in her lifetime, and the appellant then used language to and concerning West, which was disrespectful, unbecoming and uncalled for, and not provoked by anything he said.

*Held,* that these facts authorize the surrogate to revoke the letters of administration issued to the appellant:

*First.* Under the authority so to do, conferred by subdivision 4 of section 2685 of the Code of Civil Procedure, authorizing him to revoke letters where the grant was " obtained by a false suggestion of material facts;" or

*Second.* Under the authority conferred by subdivision 2 thereof, on the ground that by reason of "misconduct" in the execution of her office, the appellant was unfit for the due execution thereof.

APPEAL from a decree of the surrogate of Oneida county, revoking letters of administration granted to Mary Reynolds Jones, who was appointed administratrix, in conjunction with Joseph E. West, who was appointed administrator of the goods, chattels and credits of Elizabeth R. West, deceased.

The petition was filed and the proceedings instituted on April 4, 1884, by Joseph E. West, who was the husband and sole heir of the intestate. The petition stated that the intestate was the owner of large and valuable real estate in her own separate right and in fee simple, and of considerable personal property, "mostly in the possession of said co-administratrix." It appears that before the husband consented to the joinder of Mary R. Jones, there was a solicitation that such consent should be given by one of her brothers, " and upon his representation that there would be no conflict of interests as to said estate and upon the supposition that all the personal property of which said decedent died in possession was to be administered upon as her sole and separate estate ; that he consented to the joinder of said sister in a spirit of amity, and in the hope and expectation that she would co-operate with him in the settlement of said estate, and in the distribution, after the payment of debts and expenses, of the proceeds of the personal property." It appears that the husband had no notice or " intimation of the conflicting claim " at the time the appointment was made, and he first learned thereof about the time appointed for the appraisal of the personal property, when Mrs. Jones claimed that she and her

brothers and sisters, in virtue of certain provisions in the will of Richard Reynolds, their father, owned a large portion of the personal property in the possession of the deceased at the time of her death.

Mrs. Jones refused to allow an appraisal to be made of a large part of the personal property which had been in the possession of the deceased, and served a written notice upon Mr. West, and upon the appraisers, to the effect that a large portion of the personal property which was in the possession of the deceased preceding her death was " claimed by the executors of the last will and testament of Richard Reynolds, deceased, to be assets, to be administered and distributed under said will, and it is also claimed by the heirs-at-law and next of kin of said Richard Reynolds, deceased, and said Elizabeth West, deceased, and her survivors, as belonging to them, and both said executors and said heirs demand the possession of the same * * * as their exclusive and joint property. The undersigned verily believes that said personal property herein mentioned does belong to said executors, or the said survivors, heirs-at-law and next of kin, and does not belong to or form any part of the estate of said Elizabeth West, deceased, and should not be mentioned as such, and the undersigned does not nor will not present the same to said appraisers for appraisal, nor consent that the same shall be so appraised, nor form any part of the said estate of said Elizabeth West, and she forbids the same, both as administratrix of the estate of Elizabeth West and also as one of the survivors and heirs-at-law and next of kin of said deceased, and, further, as devisee under the will of Richard Reynolds, deceased."

When the appraisers and Mr. West sought to obtain possession of the personal property described in the notice from which the quotation has been made, a heated conversation took place, and, among other things, said Mrs. Jones accused Mr. West of having " killed " her sister.

It appeared that in February, 1877, Richard Reynolds made his last will and testament, disposing of his property to Mary Jones, Jennie Hopkins, Elizabeth Reynolds, Margaret Whiting, Richard S. Reynolds and George A. Reynolds, his children.

Subsequent to his death Mr. West intermarried with one of the children, viz. : Mary Reynolds, the intestate. When the petition

was filed with the surrogate of Oneida county, asking that the letters of administration issued to Mrs. Jones be revoked, a citation was issued, and she appeared upon the return of the citation and filed objections and made answer to the same, and set up a claim to a large portion of the personal property theretofore in the possession of her sister, the intestate. Numerous affidavits were produced before the surrogate on either side of the issue involved, and thereafter the surrogate ordered a reference to Mr. D. E. Wager, who took a large volume of evidence, and made his report to the surrogate on the 7th of January, 1885. On the 31st of January, 1885, a hearing was had before the surrogate. He ordered the matter referred back to the referee " to pass upon and find all questions as the surrogate might have passed upon them if not referred," and March 2, 1885, the referee made a supplemental report, in which he stated, among other things, viz.: In my opinion said Mary R. Jones should be removed and her letters of administration be revoked, under subdivision 1 of said section 2685 of the Code, upon the following grounds, viz.: Had Mrs. Jones, prior to and at the time of her appointment as administratrix as aforesaid, set up the same claim to this property that she afterwards did, she would not have been a proper person to have been appointed, and the surrogate would not have appointed her as administratrix (assuming objections had been taken on that point), as it would have been his duty to appoint a person whose interest in and claims to the property were and are not adverse to and in conflict with those of the *cestui que trust*. As Mrs. Jones makes such claim subsequent to her appointment, and has thereby become incompetent and disqualified by law to act as such, and the ground of the objection did not exist and the objection, therefore, was not taken at the time of her appointment, she is brought within subdivision 1, which authorizes the revocation of her letters for matters occurring afterwards.

The report of the referee, the evidence taken before him and the affidavits theretofore used in the proceedings, were brought before the surrogate on the 16th of September, 1885, who granted the decree, which, among other things, provided, viz.: " That the letters of administration granted to Mary R. Jones be revoked upon the ground and for the reasons set out and exposed in said two reports of said referee, and that the exceptions filed by Mary R. Jones be,

and the same are, overruled." The decree also required Mary R. Jones to account for all moneys and other property received by her, and upon such accounting the question of the right of said Mary R. Jones to any allowance, fees and expenses in these proceedings, and as to the amount of the same, and as to any other expenses was to be heard, determined and passed upon by the court.

*D. C. Stoddard*, for Mary R. Jones, appellant.

*N. C. White* and *William Kernan*, for Joseph E. West, as administrator, etc., petitioner and respondent.

HARDIN, P. J. :

West, the husband of the intestate, was entitled to letters of administration upon his deceased wife's estate. About the time the surrogate was to grant letters of administration Mrs. Jones and her friends applied to West for his consent that Mrs. Jones be associated with him as administratrix, and a representation and statement were made to West that there would be no conflict of interest as to the estate, and in the interest of the establishment of peaceful relations between West and his sister-in-law, Mrs. Jones, he was induced, upon such representations as were then made to him that there would be no conflict of interest, to consent that Mrs. Jones be associated with him as administratrix. As soon as the day for an appraisal was named an attempt was made to appraise the property of which the intestate died possessed. Mrs. Jones set up a claim to a large portion of the personal property, averring that it belonged to her and her sisters and brothers under the will of their father, Richard Reynolds, and Mrs. Jones refused to produce for appraisal a large portion of the personal property which the intestate had enjoyed the use of in her lifetime, and the referee finds that on the occasion of the attempt to appraise the property Mrs. Jones "became much excited and exhibited considerable spirit, feeling and temper towards petitioner, and used language towards, to and concerning him that was disrespectful, unbecoming and uncalled for, and not provoked by anything he said."

A careful inspection of the evidence taken before the referee in the protracted hearings had before him, as well as the consideration

of the matters disclosed in the affidavits used before the surrogate, lead to the conclusion that the representations and suggestions made at the time that West was induced to consent that Mrs. Jones be associated with him as administratrix, were false and unfounded, and that the grant of letters to Mrs. Jones "was obtained by a false suggestion of a material fact."

Under the Revised Statutes it was held that surrogates have power to revoke letters whenever it shall appear to them that they have been granted on or by reason of false representations made by the persons to whom the same were granted. (*Perley* v. *Sands*, 3 Edw. Ch. R., 325.)

Code of Civil Procedure, in section 2685, authorizes a creditor or person interested in an estate to present a petition to the surrogate from whom letters issue, and to ask to have a decree revoking letters, viz. : " Where the grant of his letters was obtained by a false suggestion of material fact." Under this provision of the section evidence was taken which was entirely sufficient to satisfy the surrogate that West's consent " was obtained by a false suggestion of material fact."

Notwithstanding the fact that Mrs. Jones, in her own behalf and in behalf of her sisters and brothers, claimed a large portion of the personal property under the will of their father, and that it did not pass to the intestate, and that she was not the owner of it at the time of her death, she might have consented to the inventory of the property, with reasonable and suitable notice that she insisted that it did not belong to the intestate, but, on the contrary, she stubbornly refused to have it inventoried or appraised, and the evidence taken before the surrogate furnishes strong ground for the assertion that she has been guilty of misconduct in the execution of the office of administratrix, and an inspection of the evidence leads naturally to the conclusion that " by reason of misconduct in the execution of her office she has become unfit for the due execution of the office."

In section 2687 it is provided that, upon the return of a citation issued as prescribed in the last section, " if the objections, or any of them, are established to the surrogate's satisfaction, he must make a decree revoking the letters issued to the person complained of."

We think the surrogate was called upon to determine somewhat

summarily the issues presented to him. (*McGregor* v. *Buel*, 24 N. Y., 169; *Matter of Chase*, 32 Hun, 320.)

Without passing upon the question of whether the claim set up by Mrs. Jones, in her own behalf and that of her brothers and sisters, was valid, or whether the personal property, which was the subject of dispute at the time the appraisers assembled, was the property of the intestate or not, we are of the opinion that the evidence abundantly supports the decree pronounced by the surrogate revoking letters of administration issued to Mrs. Jones. Evidently she intended then, and still intends, to dispute the title set up by the husband of the intestate to the property, a large portion of the property found in the possession of the intestate. The determination of the question in that regard need not be had on this occasion. We are of the opinion that the decree of the surrogate revoking letters of administration to Mrs. Jones should be sustained.

Decree of the surrogate of Oneida county revoking letters of administration to Mary R. Jones affirmed, with costs against the appellant.

BOARDMAN and FOLLETT, JJ., concurred.

Decree of the surrogate revoking letters of administration to Mary R. Jones affirmed, with costs of this appeal against appellant, personally.