Counsel move to dismiss an appeal taken by Catherine M. Callahan and others, from two orders entered in the Union County Orphans Court on the ground that the orders are not appealable.
The first question is whether the Prerogative Court has jurisdiction to hear the motion. In the files of the Register are no papers in any cause bearing the above title. Counsel *Page 381 
inform me, however, that there is such a proceeding in the Orphans Court and that on October 1st a notice of appeal was filed therein. The rules of the Prerogative Court regulating appeals from the Orphans Court, direct that a notice of appeal shall be filed with the Surrogate and that within 30 days thereafter a petition of appeal and a transcript of proceedings before the Orphans Court shall be filed with the Register of this court. The practice on appeal from Chancery to the Court of Errors and Appeals is similar. It is established law that the notice of appeal is the effective instrument of appeal from Chancery so that as soon as it is filed, the cause comes under the jurisdiction of the appellate court. Phillips v. Pullen,45 N.J. Eq. 157; Barton v. Long, 45 N.J. Eq. 160; Raiken v.Montefiore Cemetery Association, Inc., 123 N.J. Eq. 168. The filing of the notice of appeal with the Surrogate operated to remove the cause to this court to such an extent that a motion to dismiss may be heard in this court.
But such a motion must be founded on papers presented to this court, which disclose a situation warranting action by the court. An order of one court cannot be based on the record of another court. An order which has no basis in any record of the court making the order, or in documents filed with that court that may be made into a record, is a mere nullity. Holcomb v. Coryell,12 N.J. Eq. 289. Counsel have informally furnished me with plain copies of the record in the Orphans Court and on them I will proceed, but before any order pursuant to the motion may be entered, the moving party must file a verified copy of the Orphans Court record, or enough of it to justify the order.
John Ryan departed this life November 26th, 1926. By his will, his residuary estate was given to his executors in trust to pay the net income to his widow for life. She died December 26th, 1937. Testator owned 301 shares of the capital stock of American Gas Electric Company, which became a part of the residuary trust. From time to time, from early in 1927 to the middle of 1934, stock dividends aggregating 715 shares were declared on this stock and received by the executors and trustees. *Page 382 
The executors and trustees over the course of a number of years, made four accounting in the Orphans Court, one as executors and three as trustees, all of which were duly approved by decree of that court. The last of the decrees was made in 1937. Then, on May 26th, 1941, Miss Mary Ryan, who represents the deceased widow, filed a petition praying that the decrees be opened and the accounts resettled in order to correct certain mistakes therein. The petition alleges that the stock dividends, for the most part, were declared out of profits earned after testator's death and that such dividends or the value thereof should have been paid over to the widow in whole or in part, "but by inadvertence and mistake, said executors and trustees failed to do so and carried said shares as a part of the corpus of the estate." And in the accounts "there are errors and mistakes in connection with the setting up of said shares of stock of the American Gas Electric Company as corpus, in the particulars hereinbefore stated."
To this petition, the trustees and Mrs. Callahan and other beneficiaries filed answers. The Orphans Court thereafter, on September 5th, 1941, made an order referring it to a master to report on the truth of the petition, and what, if any, shares of the Electric Company, or their value, should have been paid to Mrs. Ryan in her lifetime, c.
At the same time, there was pending in the Orphans Court another phase of the same estate: The trustees had filed their fourth account; and Miss Ryan had filed exceptions thereto relating to the stock dividends which had been declared during the earlier accounting periods. The Orphans Court by a second order dated September 5th, 1941, referred the exceptions to the same master to whom was referred the petition of Miss Ryan.
Each of the two orders contained permission for the master to use any testimony or evidence produced before him under and by virtue of the other order.
It is from these two orders that the appellants appeal, using for that purpose a single notice of appeal.
Any person aggrieved by an order of the Orphans Court has a right of appeal to the Prerogative Court. R.S. 2:31-93. *Page 383 
Not every order, however, is appealable but only those which are of such a nature that someone may be "aggrieved" thereby. "The very object of the appeal is to redress an injury. If there is no injury to redress, there can be no appeal." Coryell v.Holcombe, 9 N.J. Eq. 650. An order which does not in any degree reach to the merits of the controversy or affect the substantial rights of a litigant, does not belong to the appealable class of orders. Camden and Amboy Railroad, c., Co. v. Stewart,21 N.J. Eq. 484. Likewise with all the ordinary orders made in the progress of the suit for putting the case fairly at issue, obtaining the requisite evidence and affording the parties a hearing. Stevens' Ex'x v. Stevens' Ex'rs, 24 N.J. Eq. 574;Dietz v. Dietz, 38 N.J. Eq. 483; In re Doland, 69 N.J. Eq. 466;Schnitzius v. Bailey, 18 Atl. Rep. 192. But even an order which belongs to the general class of those which are not reviewable, is subject to appeal if the making thereof is an abuse of discretion. In re Kellner, 121 N.J. Eq. 243.
Now it is quite apparent that the order referring the exceptions to a master does not adjudicate anything. The authority of the Orphans Court to make the reference is clearly given by the statute. R.S. 2:31-63 and R.S. 3:10-16. The appellants complain especially of the provision in the orders that the proofs taken under either order may be considered by the master in making up both his reports. The parties interested in both phases of the proceeding are the same; the questions raised in both are much alike. It was evidently the intention of the court, in order to minimize expense and to promote the convenience of all parties, that whatever evidence might be material to both inquiries, could be considered in both, without being repeated. This was within the discretion of the court. The appeal from the reference of the exceptions to a master will be dismissed.
There was no abuse of discretion in referring Miss Ryan's petition to a master unless the petition so clearly failed to state a cause of action that the Orphans Court, of its own motion, should have dismissed it. I say of its own motion, because it does not appear that the appellants moved to dismiss. Furthermore, the appellants answered the petition on the merits admitting some of the facts, denying others. *Page 384 
The statute expressly reserves to the Orphans Court authority to open decrees on accounts "where a person applying for resettlement proves fraud or mistake in the account to the satisfaction of the court." R.S. 3:10-18. The petition of Miss Ryan does not show clearly the nature of the alleged mistake. Were the widow and the trustees misinformed that the stock dividends were made out of surplus accumulated in testator's lifetime, whereas, in fact, the dividends were made out of income earned in large part after his death? Or were the parties misadvised as to the law and so believed that the dividends, regardless of when they were earned, should be treated ascorpus? Vice-Chancellor Foster, In re Van Wagner's Estate,97 Atl. Rep. 893, held that the Orphans Court had power to open a decree in order to correct mistakes of law. While this decision may be questionable, certainly the law is not clear that an account cannot be opened for a mistake of law. I think the court acted discreetly in sending the matter to a master, to take the proofs.
But the order of reference recites that Miss Ryan's petition presents a prima facie case entitling her to relief, and the order confines the master to matters "which have not already been disposed of." That apparently refers to the question whether the petition states a prima facie case. Keeping in mind the uncertainty of the petition, these provisions of the order seem to constitute an interlocutory adjudication that the decrees may be opened for errors of law. This may aggrieve appellants. The motion to dismiss the appeal from the order of reference on Miss Ryan's petition will be denied. *Page 385